[No. A025579. Sixth Dist. June 21, 1985.]

ANNE E. MILLER, Plaintiff and Appellant, v.
UNITED AIRLINES, INC., et al., Defendants and Respondents.

## COUNSEL

M. Jean Starcevich, Susan R. Reischl and Robert L. Mezzetti for Plaintiff and Appellant.

Gilmore F. Diekmann, Jr., Elliot L. Bien, Richard R. Dale and Bronson, Bronson & McKinnon for Defendants and Respondents.

OPINION

AGLIANO, J.—

*Introduction*

Plaintiff Anne Miller appeals from a summary judgment in favor of her employer United Airlines, Inc. (United) and fellow employees, Laurie Whipple, Susan Remsberg, Karen Burke and Edda Beering.

Plaintiff's 10 causes of action included claims of invasion of privacy, libel, slander, interference with contract, intentional and negligent infliction of emotional distress, negligence, breach of implied covenant of good faith and fair dealing, false imprisonment, and violation of civil rights. She alleged resultant humiliation, mental anguish, emotional and physical distress and mental and physical injury requiring medical treatment with hospital and doctor expense.

The trial court found, on facts essentially undisputed for summary judgment purposes, that plaintiff's exclusive remedy for the matters set forth in nine of her ten causes of action was the grievance and arbitration process prescribed in a collective bargaining agreement between United and plaintiff's union, and as to the tenth cause of action plaintiff had not exhausted an administrative remedy under the California Fair Employment and Housing Act. The trial court determined as an alternative ground for judgment that plaintiff's claims were covered exclusively by the California Worker's Compensation Act.

On appeal, we conclude that summary judgment was properly entered in favor of defendants. Plaintiff's exclusive remedy lies within the procedures outlined in the collective bargaining agreement, and plaintiff has not exhausted her administrative remedies under the Fair Employment and Housing Act. Having reached this conclusion, we do not decide whether plaintiff's claims are covered exclusively by the Worker's Compensation Act.

It is first noted that plaintiff's brief argues the liability of United and not that of the individual defendants. Under these circumstances, the appeal as it relates to these individual plaintiffs is deemed abandoned.

*The Factual Contentions*

The deposition testimony of plaintiff supplies the facts proffered by defendants in aid of their summary judgment motion.

Plaintiff is a senior flight attendant who, at age 20, commenced her employment with United in 1960. The genesis of plaintiff's complaint was a 1982 written petition to United by some of her fellow flight attendants, including defendant Laurie Whipple, listing a number of complaints concerning plaintiff's performance as a first flight attendant. Ms. Whipple, a junior flight attendant, had circulated the petition, urging as an inducement, the removal of seniors to make room for junior attendants. Plaintiff was told the document was highly critical of her work and character.

Defendant Sue Remsberg, employed in United's Inflight Services, called plaintiff to arrange a meeting. Plaintiff asked but was not told the purpose of the meeting. Had she known, she would have been accompanied by a union representative to represent her. Plaintiff attempted suicide three days before the scheduled meeting because she felt distraught about the forthcoming meeting, its mysterious nature, two prior cancellations of the meeting and the information she had gained of the petition. She was also upset at her union's advice that nothing could be done about the petition, because she had not been disciplined, and the petition was not part of her record.

Plaintiff finally met with Remsberg on June 21, 1982. Plaintiff was provided a summary of the petition. Ms. Remsberg told plaintiff that if any of the matters set forth in the petition were true, or believed by her to be true, she would see to it that plaintiff was fired. Plaintiff asked to see the original petition and the names on it but her request was denied. She asked to have those who signed the petition brought into the United office so that she could confront and question them. This request was also denied. Ms. Remsberg told plaintiff she was receiving an oral warning and that she would be observed in the future.

Plaintiff felt involuntarily detained in the meeting room prior to being dismissed from the meeting by Ms. Remsberg, a representative of management.

On July 24, 1982, plaintiff was required to participate in a counseling session, after which she was told not to worry, that nothing adverse would appear in her personnel file. However, she later discovered that the July 24 session had been noted on her counseling performance record and she was also advised of new articles of conduct and disciplinary measures applicable to an employee in her position.

On October 11, 1982, plaintiff attended another counseling session in which she was advised of a "ghost ride" observation of her performance on a flight. In the opinion of the observer, plaintiff met basic expectations for a United employee. Nevertheless, Remsberg gave her an oral warning.

On or about October 22, 1982, an "onion" letter was sent to United by a passenger complaining that plaintiff had been discourteous, rude and offensive on a certain flight from Hawaii. It turned out that plaintiff was not on the flight, leading plaintiff to infer that the offended passenger had been given plaintiff's name rather than that of the attendant whose conduct generated the complaint.

During the period of time plaintiff was subjected to the described treatment, United passengers had written laudatory letters concerning plaintiff's performance. Known in the industry as "orchid" letters, they were attached to plaintiff's declaration in opposition to the defendants' motion for summary judgment.

At a March 14, 1983 counseling session, plaintiff was again advised she had been observed by a "ghost rider." This observer reported plaintiff was sitting in "seat 5B conversing with passenger [in seat] 5A from 2:58 pm until 3:41 pm, a total of 43 [minutes]," while other passengers were left unattended. The contention was not true, since no passenger occupied seat 5A on this flight and plaintiff had saved the documentation to prove it.

Plaintiff alleged subjection to harassment on other occasions as well. She was called into the office unexpectedly for "off the record" discussions and interrogations. Also, she and her husband were telephoned at home a number of times.

Plaintiff claimed the treatment she was exposed to was part of United's campaign to force senior employees out of its workforce and reduce its costs. Plaintiff overheard two supervisors discuss the use of "ghost riders" on the flights of senior attendants as part of the campaign. Two senior flight attendants with 25 years or more experience had been similarly treated and one of them resigned. Plaintiff had six years remaining before full retirement.

Plaintiff testified that the conduct of United and her fellow employees caused her attempted suicide, anxiety, doubts as to her ability, nervous tension, headaches, stomach pains, back aches, and neck aches. Her career was severely damaged by destruction of her working relationship with management. Plaintiff's flying partners became nervous because they knew she was "targeted" for surveillance by management. The harassment caused her to relinquish her position as first flight attendant which cost her approximately $200 a month in income.

Plaintiff filed a grievance with the Systems Board of Adjustment as provided for in the collective bargaining agreement between United and the

Association of Flight Attendants. The grievance process was still pending when she filed the instant action.

*Discussion*

 Plaintiff contends that the trial court erred in determining that her first through ninth causes of action are barred by the provisions of the Railway Labor Act (RLA).

The Railway Labor Act, 45 United States Code section 151 et seq., governs the employment relationship between airlines engaged in interstate commerce and their employees.[1] A primary purpose of the RLA is to provide uniform regulations applicable to the industry nationwide. In referring to congressional considerations relating to this legislation, the Supreme Court in *California* v. *Taylor* (1957) 353 U.S. 553, at pages 567-568, footnote 15 [1 L.Ed.2d 1034, at page 1043, 77 S.Ct. 1037], quoted from the report of the House Committee on Interstate and Foreign Commerce: " 'Railroads and airlines are direct instrumentalities of interstate commerce; the Railway Labor Act requires collective bargaining on a system-wide basis; agreements are uniformly negotiated for an entire railroad system and regulate the rates of pay, rules of working conditions of employees in many States; . . .' (H.R. Rep. No. 2811, 81st Cong., 2d Sess. 5.)"

45 United States Code section 151a itself defines some of the purposes of the RLA: "(4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." In order to implement these purposes, railroads and airlines have a duty "to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise." (45 U.S.C. § 152.) Employers also have an obligation to establish a grievance procedure which employers and their employees must follow in resolving employment disputes. Section 153 requires that disputes between railroads and their employees be submitted to the National Railroad Adjustment Board or to a system, group, or regional board. Section 184 provides that disputes between employees and airlines "shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by

---

[1] Congress extended coverage of the Railway Labor Act to airlines in 1936. (45 U.S.C. § 181.)

either party to an appropriate adjustment board." The Supreme Court has defined the disputes to be handled by the board of adjustment as those "involving grievances, [which] affect the smaller differences which inevitably appear in the carrying out of major agreements and policies or [which] arise incidentally in the course of an employment. They represent specific maladjustments of a detailed or individual quality. . . . [b]ecause of their comparatively minor character and the general improbability of their causing interruption of peaceful relations and of traffic, the 1934 Act sets them apart from the major disputes and provides for very different treatment." (*Elgin, J. & E. R. Co.* v. *Burley* (1945) 325 U.S. 711, 724 [89 L.Ed. 1886, 1895, 65 S.Ct. 1282].) Courts apply the RLA to railroad and airline adjustment boards in the same manner, even though different provisions of the RLA govern each industry. (See, e.g., *Machinists* v. *Central Airlines* (1963) 372 U.S. 682 [10 L.Ed.2d 67, 83 S.Ct. 956]; *Bernhardt* v. *American Airlines, Inc.* (9th Cir. 1975) 511 F.2d 1219, 1220, fn. 1.)

▇ It has been held that the provisions of the collective bargaining agreements negotiated between employers and their employee unions under the RLA are made pursuant to federal law. (*Railway Employes' Dept.* v. *Hanson* (1956) 351 U.S. 225, 232 [100 L.Ed. 1112, 1130-1131, 76 S.Ct. 714].)
▇ The Supreme Court has also held that in some situations the RLA establishes the exclusive mechanism for addressing and resolving the grievances of airline and railroad employees over issues related to their employment. An individual who litigates a claim before an adjustment board on the merits may not relitigate the matter in an independent judicial proceeding. (*Andrews* v. *Louisville & Nashville R. Co.* (1972) 406 U.S. 320, 325 [32 L.Ed.2d 95, 100, 92 S.Ct. 1562].)

In *Gunther* v. *San Diego & A. E. R. Co.* (1965) 382 U.S. 257 [15 L.Ed.2d 308, 86 S.Ct. 368], the court addressed the issue of a federal court's rejection of the Railway Adjustment Board's interpretation of a collective bargaining agreement. The court reviewed prior authority applicable to the RLA, observing that: "This Court time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board. In *Brotherhood of Railroad Trainmen* v. *Chicago River & Indiana R. Co.,* 353 U.S. 30, the Court gave a Board decision the same finality that a decision of arbitrators would have. In *Union Pacific R. Co.* v. *Price,* 360 U.S. 601, the Court discussed the legislative history of the Act at length and pointed out that it 'was designed for effective and final decision of grievances which arise daily' and that its 'statutory scheme cannot realistically be squared with the contention that Congress did not purpose to foreclose litigation in the courts over grievances submitted to and disposed of by the Board . . . .' 360 U.S., at 616. Also in *Locomotive Engineers* v. *Louisville & Nashville*

*R. Co.,* 373 U.S. 33, the Court said that prior decisions of this Court had made it clear that the Adjustment Board provisions were to be considered as 'compulsory arbitration in this limited field,' p. 40, 'the complete and final means for settling minor disputes,' p. 39, and 'a mandatory, exclusive, and comprehensive system for resolving grievance disputes.' P. 38." (*Id.,* at pp. 263-264 [15 L.Ed.2d at p. 312].)

In a case similar to the instant one, a railroad employee filed an action in state court based on state law for breach of contract. (*Andrews, supra,* 406 U.S. 320.) The suit was dismissed on the ground that the employee failed to exhaust his administrative remedies pursuant to the RLA. The Supreme Court affirmed after examining the issue of whether the right asserted by the employee had its source in the collective bargaining agreement. The court stated that "the notion that the grievance and arbitration procedures provided for minor disputes in the Railway Labor Act are optional, to be availed of as the employee or the carrier chooses, was never good history and is no longer good law." (*Id.,* at p. 322 [32 L.Ed.2d at p. 98].) The court also observed that the administrative remedy outlined in the RLA is not derived from any contractual relationship between the parties, but from the RLA itself. (*Id.,* at p. 323 [32 L.Ed.2d at pp. 98-99].)

■ In the instant case, there is a collective bargaining agreement between United and the Association of Flight Attendants (AFA). Plaintiff is a member of the AFA. The agreement outlines the procedures relating to the discipline of flight attendants and the processing of flight attendants' grievances. Flight attendants' complaints regarding discipline, contract matters, company policies and "any action of the company which affects her/him" are subject to the grievance procedures. Pursuant to the RLA, the agreement also establishes a System Board of Adjustment to resolve disputes between United and its employees after certain grievance procedures have been exhausted. Plaintiff concedes that she is covered by the collective bargaining agreement and that she has filed grievances regarding the matters included in her complaint. The grievances are being processed, however, the System Board of Adjustment has not yet ruled upon them. Plaintiff's grievances consist essentially of the circulation of a petition which falsely criticizes her work and character and the procedures followed by United in investigating the allegations in the petition. These grievances involve a dispute over the interpretation of the collective bargaining agreement, that is, whether appropriate procedures have been followed when a flight attendant's performance is considered inadequate either by her employer or her fellow employees. This dispute concerns working conditions and thus the RLA mandates that plaintiff must pursue her remedies as set forth in the collective bargaining agreement.

Plaintiff does not attempt to refute or distinguish any of the authorities cited by defendants to defend their claim that the RLA bars plaintiff's first through ninth causes of action. Instead, she argues that since she has no adequate remedy for emotional and physical distress under the collective bargaining agreement between United and AFA, she may bring a civil action based on state tort and contract principles in state court. However, none of the cases upon which she relies stand for this proposition.

Our review of the relevant case authority persuades us that plaintiff's contention has no merit, because federal law preempts state law in the case at bar.

In the interest of national uniformity, federal law deprives state courts of jurisdiction to hear controversies in certain areas of labor relations. In *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773], the court observed that, "[w]hen the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from acting." (*Id.*, at p. 243 [3 L.Ed.2d at p. 782].) Two exceptions were recognized: "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act" and "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." (*Id.*, at pp. 243-244 [3 L.Ed.2d at p. 782].)

Cases decided after *Garmon* and dealing specifically with the RLA define more precisely when state regulation is preempted by federal law. In *Magnuson* v. *Burlington Northern, Inc.* (D.Mont. 1976) 413 F.Supp. 870 (affd. (9th Cir. 1978) 576 F.2d 1367, cert. den. (1978) 439 U.S. 930 [58 L.Ed.2d 323, 99 S.Ct. 318]), a railroad employee sued his employer in state court for intentional infliction of emotional distress. The court held that plaintiff's claim was governed by federal, not state, law, noting "[t]he plaintiff's employment rights were created by and are subject to the Railway Labor Act and therefore are governed by federal labor law, which is paramount to state law." (*Id.*, at p. 872.) The plaintiff appealed contending that his action was in tort, rather than premised on the collective bargaining agreement. The court rejected this contention and affirmed the trial court after finding that the claim involved the conduct of the employer and other employees during the investigation of plaintiff's performance. "Every employee who believes he has a legitimate grievance will doubtless have some emotional anguish occasioned by his belief that he has been wronged. Artful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge. If the pleading of emotional injury permitted aggrieved employ-

ees to avoid the impact of the R.L.A., the congressional purpose of providing a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry, without resort to the courts, would be thwarted." (576 F.2d at p. 1369.)

A situation similar to the present one arose in *Macy* v. *Trans World Airlines, Inc.* (D.Md. 1974) 381 F.Supp. 142. In that case, the employee sought damages for alleged libelous and defamatory statements made while the employee was pursuing his claims under the collective bargaining agreement. The court rejected plaintiff's contention that he be allowed to proceed in state court. "If a party to a Collective Bargaining Agreement, in acting to enforce rights through procedures mandated by the Collective Bargaining Agreement and the Railway Labor Act, can, by complying with the requirements of said agreement and statute, be held subject to an action in libel for the acts mandated by said statute and agreement, the federal policies expressed in the Railway Labor Act would be substantially jeopardized." (*Id.,* at p. 148.) Thus, the court held that its jurisdiction over plaintiff's tort claims was preempted by federal law.

In *Majors* v. *U.S. Air., Inc.* (D.Md. 1981) 525 F.Supp. 853, an employee brought suit for false imprisonment and defamation. Relying on *Farmer* v. *United Brotherhood of Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056], he argued that his action fell within the exception to the general preemption rule, because the state had a substantial interest in protecting its citizens from the type of conduct engaged in by the employer. The court found, however, that assertion of its jurisdiction would interfere with the federal regulatory scheme. "As in *Magnuson,* Majors is complaining about allegedly tortious conduct committed in the course of a company investigation. So long as his claim is founded on some incident of the employment relation, it is immaterial, for purposes of coverage by the Railway Labor Act, whether the claim is expressly covered by the collective bargaining agreement, or is independent of that agreement. (*Elgin J. & E. Ry.* v. *Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945). Investigations of suspected thefts of company property is a normal incident of any employment relationship. This is especially so where, as here, theft is a grounds for discharge under the collective bargaining agreement. [Fn. omitted.] Therefore, although that agreement does not speak to the procedures that govern such investigations, the dispute at issue bears a not insubstantial relationship to the labor contract, and this Court's jurisdiction is preempted. Accordingly, defendant's motion for summary judgment will be granted." (*Majors, supra,* 525 F.Supp. at p. 857.)

As in *Magnuson* and *Macy,* both *supra,* plaintiff's claims deal with the conduct of her employer and fellow employees during the period when her

work performance was being evaluated and when she pursued her grievances under the collective bargaining agreement. The claims concern the interpretation of the collective bargaining agreement itself and thus are not "merely a peripheral concern" of the RLA. Nor do we find that the claims involve what *Garmon* referred to as "conduct [which] touch[es] interests so deeply rooted in local feeling and responsibility" that states are not precluded from regulating in this area of labor relations. (*Garmon, supra,* 359 U.S. 236, 243, 244 [3 L.Ed.2d 775, 782].) United may evaluate plaintiff's performance and the procedures by which it may do so are outlined fully in the collective bargaining agreement. While plaintiff has every right to object to the evaluation process, it is the collective bargaining agreement which sets forth the procedures for resolving such a dispute. To allow plaintiff to characterize her claim as one based on state tort and contract principles would enable her to frustrate the comprehensive federal scheme for resolution of disputes in the airline industry.

■ We also note that the availability of damages under state law does not alter federal preemption findings. (See, e.g., *San Diego Unions* v. *Garmon, supra,* 359 U.S. 236, 246-247 [3 L.Ed.2d 775, 783-784]; *Magnuson* v. *Burlington Northern, Inc., supra,* 576 F.2d 1367, 1369.)

■ Thus, we conclude that federal law preempts state law where the plaintiff's claims are inextricably tied to the procedures set forth in the collective bargaining agreement. The trial court properly dismissed plaintiff's first through ninth causes of action on the ground that they were barred by the RLA.

■ Plaintiff also contends that she exhausted her administrative remedies as to her 10th cause of action, and accordingly summary judgment in favor of defendants was improper. Plaintiff's 10th cause of action alleged that she was the victim of age discrimination in violation of the Fair Employment and Housing Act (FEHA).

Government Code section 12900 et seq., sets forth procedures to be followed when a complaint is filed under the FEHA. Government Code section 12965, subdivision (b), provides as follows: "If an accusation is not issued within 150 days after the filing of a complaint, or if the department earlier determines that no accusation will issue, the department shall promptly notify, in writing, the person claiming to be aggrieved. Such notice shall indicate that the person claiming to be aggrieved may bring a civil action under this part against the person, employer, labor organization or employment agency named in the verified complaint within one year from the date of such notice. The superior, municipal, and justice courts of the State of California shall have jurisdiction of such actions. . . . "

■ In *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211 [185 Cal.Rptr. 270, 649 P.2d 912], the court confirmed that an individual must exhaust his or her administrative remedies before filing a civil action. Having summarized the procedures that an individual must follow within the department, the court stated that "[o]nly then may that person sue in the superior court 'under this part.'" (*Id.,* at p. 214.)

■ The failure to exhaust an administrative remedy is a jurisdictional, not a procedural, defect. Thus, instead of abating an action as premature, a trial court must grant summary judgment and dismiss the suit upon a finding that a party has not exhausted his or her administrative remedies. (*Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 318 [159 Cal.Rptr. 416].)

■ In the instant case, plaintiff's complaint did not allege that she had filed a charge with the Department of Fair Employment and Housing (DFEH) and in her deposition she stated that she had not done so. Accordingly, she could not maintain a civil action alleging violations of the FEHA until after she had exhausted her administrative remedies pursuant to the FEHA. The trial court properly granted summary judgment in favor of defendants.

However, plaintiff contends that her motion for reconsideration pursuant to Code of Civil Procedure section 1008, subdivision (a), should have been granted. The trial court issued its order granting defendants' motion for summary judgment and dismissing plaintiff's claim on September 22, 1983. Plaintiff received a copy of the order on September 26, 1983. On October 13, 1983, plaintiff filed her motion for reconsideration. She attached a copy of the right-to-sue letter in which the DFEH notified her that she could bring an action in superior court.

Code of Civil Procedure section 1008, subdivision (a), provides: "When an application for an order has been made to a judge, or to the court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within ten (10) days after knowledge of the order and based upon an alleged different state of facts may, make application to the same judge who made the order, to reconsider the matter and modify, amend or revoke the prior order."

In the case at bar, plaintiff's motion for reconsideration was not filed in a timely manner. There is nothing in the record on appeal to indicate that plaintiff was given an extension. However, even assuming that plaintiff met the requirements of section 1008, she did not exhaust her administrative

remedies prior to filing the present civil action. Consequently we find no error by the trial court in dismissing the 10th cause of action.

For the foregoing reasons, the judgment is affirmed.

Panelli, P. J., and Brauer, J., concurred.

A petition for a rehearing was denied July 18, 1985.