935 F.2d 1289
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Daniel YOUNG, Plaintiff-Appellant,
v.
WESTINGHOUSE ELECTRIC CORPORATION, Calib Williams, General
Manager, Defendants-Appellees,
and
Joseph Lowman, Sergeant and Supervisor of Security, Roger
Richmond, Employee Relations Assistant Manager, Defendants.
 No. 90-2125.
 United States Court of Appeals, Fourth Circuit.
 Argued April 8, 1991.
Decided June 25, 1991.
As Amended July 17, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CA-89-2142-HAR)
 Gary Wallace Smith, Richard Paul Neuworth, Baltimore, Md., for appellant.
 Jeffrey Elliot Rockman, Frank, Bernsetin, Conaway & Goldman, Baltimore, Md. (Argued), for appellees; Rosemary A. Gladue, Leonard E. Cohen, Frank, Bernsetin, Conaway & Goldman, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, BUTZNER, Senior Circuit Judge, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Daniel Young appeals the action of the court below in granting summary judgment to the defendants (collectively referred to as "Westinghouse"). On July 26, 1989, Young filed a suit against Westinghouse in the United States District Court for the District of Maryland accusing them of defaming him by virtue of an accusation--and its improper dissemination--of being involved with controlled dangerous substances while he was at work in Westinghouse's factory.
 
 
 2
 At the conclusion of discovery, the defendants filed a motion for summary judgment, alleging, first, that no defamatory statements were made, and second, that any statements which might have been made were protected by a conditional privilege. On May 29, 1990, the court entered a memorandum opinion granting the defendants' summary judgment motion. After a detailed analysis of the evidence, the court concluded that the conditional privilege applicable to the relationship between employee and employer had not been abused.
 
 I.
 
 3
 Young had been employed by Westinghouse since June 1, 1972, at the Electronic Systems Group facility in Hunt Valley, Maryland, which is engaged in part in defense contract work. At the time of the incidents pertinent to this law suit, Calib Williams was the Manager of Spares Operations in the building in which Young worked.
 
 
 4
 In February 1989, a confidential informant told Williams that the informant had observed employees using controlled dangerous substances at work. Williams then spoke with the Manager of Security Operations and that manager in turn got in touch with Westinghouse's Security Manager for Investigations.
 
 
 5
 As a result of these conversations, a videocamera was installed and surveillance was undertaken of the areas indicated by the confidential informant. Employees Krabitz and Carrigan worked in the area where the camera was installed, but Young did not. Krabitz was seen on a regular basis taking small white packets and ingesting the contents of those packets either orally or nasally. Carrigan was observed giving the white packets to Krabitz.
 
 
 6
 On April 19, 1989, the camera recorded Carrigan reaching into his right boot and handing a small packet of white folded paper to Krabitz, who placed it is his toolbox. Shortly thereafter Young came into the area and Carrigan reached into his right boot to produce what the observers, security investigators Webster and Stith, believed to be a small packet of cocaine. The camera also recorded Young placing the packet received from Carrigan in the right front pocket of his pants. Shortly thereafter the videotape showed Young taking a small packet of what looked like white folded paper from Krabitz. Young then left the area.
 
 
 7
 An extensive investigation followed, involving, among others, members of the Baltimore County Police Department, who were asked to give their views concerning what the evidence and the tape revealed. Webster testified that the Narcotics Division of the Baltimore County police had looked at the videotapes and had agreed with the conclusion that controlled dangerous substances were involved in the transaction.
 
 
 8
 Further extensive review of the evidence was conducted by the managers of the four employees who were suspended, Young, Krabitz, Carrigan, and Keith Jones. Management's conclusion was that the employees would be discharged, but that each employee would be afforded an opportunity to present any information the employee wished concerning the events shown on the videotape.
 
 
 9
 In the interview with management, Young asserted no involvement with drugs. He stated that the videotape showed him purchasing thirty packets of vitamins, which he used because of his interest in body building and strength building. At the same time that Young alleges he bought the vitamins from Carrigan, he also alleged that he bought from Carrigan an ammunition clip for a handgun.
 
 
 10
 The managers who conducted this interview found Young's statements to be incredible, believing that it simply was not possible for Carrigan to have removed thirty packets of vitamins from his boot and for Young to have been able to place all of the vitamins and the ammunition clip in his pants pocket. Thereafter, the decision was made that Young and the other employees would be terminated.
 
 
 11
 As to the dissemination of the information concerning the termination, the evidence clearly shows that only two persons other than the managers knew why Young was first suspended and then terminated. After the suspension, Young's immediate supervisor, Betsy Miller, was advised that Young had been suspended for a rule 11 violation (possession of drugs on company property) so that Miller could make arrangements for covering Young's work during the period of suspension. Thereafter, Miller told the five principal employees in that department to make arrangements to get Young's work done, but she did not mention the reason for his suspension. Appellee Williams told his immediate supervisor, James Detterman, about the suspension and termination of the four employees, all of whom were in Detterman's division.
 
 
 12
 Following the termination, Young was escorted from the premises of Westinghouse by Williams and his supervisor, Goebbel. Young contends that being escorted off the premises in this fashion was an additional publication of charges against him. It is uncontroverted that it is the policy of Westinghouse to escort any suspended or terminated employee, off the premises, just as Goebbel escorted Young on the day of termination. Moreover, Young stated that only Jonathan Kennedy actually saw him escorted off the premises. In his affidavit, Kennedy does not state that he knew why Young was being escorted, nor does he assert that he associated Young's being escorted off the premises with any possession of a controlled dangerous substance.
 
 
 13
 The court finds a matter of some concern on this point. Both in his brief and in his reply brief, the appellant refers to the fact that the fellow employees around at the time when Young was escorted off the premises were "screaming" about Young's removal.
 
 
 14
 This is based, so far as the Joint Appendix shows, on an affidavit by Louis Cavicchio dated March 19, 1990. (Joint Appendix at pp. 491-92). Not one reference is made to the fact that Cavicchio made a second affidavit dated April 6, 1990, (Joint Appendix at pp. 517-18), in which he states that the first affidavit was "composed by Danny Young's attorney" and that he did not thoroughly review that first affidavit before signing it. He goes on to say, "Upon reviewing this affidavit, I find that it contains inaccurate statements of facts which I never told Danny Young or his attorneys." The second Cavicchio affidavit also says that
 
 
 15
 There were no people "screaming" that Westinghouse security lead Danny Young off of the premises, as is stated in my March 19, 1990 affidavit. I did see, however, Joseph and Curt Goebbel escort Mr. Young from the material control office to the office area in the front of Building 29 on May 5, 1989.
 
 
 16
 At the very least, the reference to screaming in the initial affidavit is subject to question in light of the second affidavit, but there is no mention anywhere in either appellant's brief or the reply brief about the second affidavit. Such a partial recitation of the evidence gives this court grave concern. The problems set out by the reference to "screaming" in the appellant's briefs, together with some similar but less egregious instances, required a vigorous and detailed examination of the joint appendix. Counsel should recognize that such selective references to the evidence in any brief affects adversely the persuasive power of that brief.
 
 II.
 
 17
 The parties agree that Maryland law establishes a conditional privilege to statements which might otherwise be defamatory where those statements arise out of an employment relationship. See De Leon v. St. Joseph Hospital, Inc., 871 F.2d 1229 (4th Cir.), cert. denied, 493 U.S. ----, 110 S.Ct. 87 (1989). As cited in the district court's opinion, De Leon spells out the elements of defamation under Maryland law as follows:
 
 
 18
 (a) a false and defamatory statement concerning another;
 
 
 19
 (b) an unprivileged publication to a third party;
 
 
 20
 (c) fault amounting to at least negligence on the part of the publisher; and
 
 
 21
 (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.
 
 
 22
 De Leon, 871 F.2d at 1236 (quoting Restatement (Second) of Torts Sec. 588 at 155 (1977)).
 
 
 23
 The statements here were unquestionably made in the course of an employment relationship. In order to avoid the defense of conditional privilege, under Maryland law, the plaintiff must establish actual malice. Macy v. Trans World Airlines, Inc., 381 F.Supp. 142 (D.Md.1974). This requires that the publisher of the statement has knowledge of the falsity of that statement or has a reckless disregard as to the truth, drawing from New York Times v. Sullivan, 376 U.S. 254 (1964), and employed in Marchesi v. Franchino, 283 Md. 131, 382 A.2d 1129 (1978).
 
 
 24
 A careful perusal of the Joint Appendix shows no conflict in the material portions of the evidence as to the following matters. The allegedly defamatory statements made by the various representatives of Westinghouse were that Young was suspected of being in possession of a controlled dangerous substance. Further, no disputed matter exists in the evidence relating to the persons to whom communications of the alleged defamatory were made, all of whom were supervisors or co-employees whose duties required that they know at least some of the information. The only exception to this is the asserted publication of the statement when Young was escorted from the premises. Aside from the dubious "screaming" issue, this court finds no way in which being escorted from a job site can be construed to be a statement of suspicion of possession of controlled dangerous substances, particularly in light of the fact that it is the standard practice of Westinghouse so to escort from the premises a person who has been terminated or who has resigned.
 
 
 25
 While the appellant makes much of purported inconsistencies and conflicts in various aspects of the testimony offered in the case, no such conflict exists as to the material facts. A detailed and precise review of the Joint Appendix fails to reveal "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Where there is no genuine issue as to any material fact, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). This court, having made a careful review of the record, determines that summary judgment was appropriate.
 
 
 26
 Finally, Young asserts that the district court erred by denying his request to file a Second Amended Complaint, he having previously filed a First Amended Complaint. The Second Amended Complaint did not add claims or defendants, nor did it correct insufficiently stated claims. Its purpose was, as Young states, "merely to correct errors in the First Amended Complaint and to cite materials obtained through discovery." The court below denied the motion because the Second Amended Complaint appeared to be a "refiling of the original complaint."
 
 
 27
 Federal Rule of Civil Procedure 15(a) provides that "leave shall be freely given [to file an amended complaint] when justice so requires." The Supreme Court has directed that such motions be granted in the absence of "undue delay, bad faith or dilatory motive ... undue prejudice to the opposing party ... futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).
 
 
 28
 The denial by the court below of Young's motion was briefly stated, but this court does not find that it abused its discretion under Rule 15(a). Because the Second Amended Complaint was similar to the previously filed Complaints, as to parties and claims, the defendants would have been prejudiced by having to start again from square one in answering the complaint, especially as they were already on the eve of the summary judgment motion. Also, the similarity of Young's complaints suggests the futility of a further amendment. Consequently, this court finds that the district court's denial of Young's Motion to Amend his complaint a second time was not an abuse of its discretion.
 
 
 29
 For the reasons indicated, the judgment of the court below in the grant of summary judgment is
 
 
 30
 AFFIRMED.