[No. F002342. Fifth Dist. Sept. 14, 1984.]

LELAND P. TOS et al., Plaintiffs and Appellants, v.
MAYFAIR PACKING COMPANY, Defendant and Respondent.

68

COUNSEL

Griswold, Bissig, LaSalle, Cobb & Dowd, Robert M. Dowd and Robert W. Gin for Plaintiffs and Appellants.

Frank J. Testa for Defendant and Respondent.

OPINION

**HANSON (P. D.), Acting P. J.—**

STATEMENT OF THE CASE

Leland P. Tos, Tos Farms, Inc., Marchbank Farms, Inc., and Odis Arnold Nickolson (appellants) appeal from a judgment in a consolidated action in Kings County Superior Court. The case was ordered submitted after the court obtained stipulations from counsel that no material issues of fact remained to be decided by the jury, and the validity of appellants' claim for damages was a question of law involving the interpretation of Food and Agricultural Code sections 62801 and 62802. The sole issue on appeal is whether the trial court erred in its interpretation of the statute. We conclude the trial court incorrectly interpreted the language of section 62801, but properly determined that the penalty in section 62802 does not apply to these facts. A ruling which is legally correct will not be disturbed on appeal merely because it may have been "given for a wrong reason." (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) We therefore affirm the judgment.

STATEMENT OF FACTS

The limited record on appeal[1] indicates that written contracts, with the exception of the oral Marchbank contract, were entered into between respondent and appellants, growers of walnuts, effecting the sale of appellants' entire 1979 walnut crop to respondent. At the time the contracts were entered into, the walnuts had begun to form on the trees but were not ready for harvest or delivery.

Appellants allege the contracts failed to specify the full purchase price of the walnuts in a definite sum (Marchbank, Tos, Tos Farms, Inc., and Nickolson contracts) and the price per "unit of weight or measure" (Tos, Tos Farms, Inc., and Nickolson contracts), in violation of the provisions of Food and Agricultural Code section 62801.[2] As against respondent, therefore, appellants urge imposition of the statutory penalty of twice the reasonable value of the walnuts delivered under each contract in violation of the provisions of section 62801, as provided by section 62802.

The following factual stipulations were presented to the court: "One, that after the walnuts owned by the plaintiffs herein became in actual existence within the meaning of Section 62801 of the California Food and Agricultural Code, but before the walnuts were ready for immediate delivery, plaintiffs and defendants entered into contracts for the purchase and sale of said walnuts.

"Number two, that the plaintiffs were paid a reasonable price for said walnuts within the meaning of Section 62802 of the California Food and Agricultural Code after their delivery.

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"And . . . that there would be no exemption on the part of Mayfair Packing Company under Section 62803 of the California Food and Agricultural Code." The court also received a stipulation that the written contracts between appellants and respondent were admitted into evidence and that by "the terms of the [oral] agreement between Mr. Marchbanks and Mayfair Packing Company [Marchbanks] was . . . to be paid the prevailing price,

---

[1]An earlier trial of the matter held on December 1, 1982, resulted in a mistrial at the conclusion of the first day of testimony. No new evidence was presented at the second trial on March 14, 1983, subject of this appeal. The case was submitted upon factual stipulations. The reporter's transcript is comprised largely of testimony from the earlier matter, none of which is before us in deciding this appeal.

[2]Unless otherwise indicated, all statutory references are to the Food and Agricultural Code.

paid by major independent packers within the area for like size, and quality walnuts."

The written contracts were largely in printed form, but the price terms were handwritten, and specified an "estimated quantity in tons on net weight salable percentage" to be delivered, but left the full purchase price and "base price in cents per pound on net weight" open. The agreed price in the contract between appellant Tos Farms, Inc., and respondent established a price "equal [to the] highest price for like size & Quality [walnuts] established within [the] District by major independent Handlers." Similarly, the written contract between Nickolson and respondent declared the price was to be the "prevaling [sic] price in district [for] like major independant [sic] packers [and] like size and quality walnuts." The handwritten price terms of the contract between appellant Tos and respondent are illegible. However, there is no indication the terms differed from the above described contracts.

ISSUE

*The General Provisions of Sections 62801 and 62802 Governing Sales Agreements Between Producers and Purchasers of Edible Nuts Apply To These Contracts.*

Appellants contend though they received a reasonable price from respondent for their walnuts, they are entitled to collect the double penalty imposed by section 62802 because the contracts between the parties failed to set a definite price or a specified price per unit of weight or measure as required by section 62801.

In 1979 when the contracts between appellants and respondent were agreed upon, the pertinent sections provided: "[Section 62801.] Except as otherwise provided in Section 62803,[3] every contract for the sale of edible nuts which are not in actual existence or ready for immediate delivery shall be in writing and shall state the full purchase price which is to be paid in accordance with the terms of the contract. It shall state the price in a definite sum and, if the price is to be paid upon the basis of units of weight or measure, shall specify or describe such unit and state the full unit price.

"[Section 62802.] Any purchaser of edible nuts which are delivered pursuant to a contract in violation of this article is liable to the seller for the

---

[3]Section 62803 reads in pertinent part: "This article is not applicable to any contract between any member of any cooperative agricultural marketing association, which is operating under, and by virtue of, the laws of this state, . . ."

reasonable value of such nuts as of time of delivery and, in addition, is liable to the seller for a penalty of twice the reasonable value of such nuts."

We have found no cases interpreting these sections and find no indication the provisions have ever been acknowledged either by growers or buyers until this lawsuit. Counsel for the parties cite no authority interpreting or even recognizing the sections. We must surmise the language has gone unnoticed from the time of origin in 1943 until this litigation involving the 1979 harvest. This is an impressive reason for our interpreting the two sections with great care.

Appellants argue that section 62801 functions as a remedial statute and therefore must be liberally construed to require a written contract specifying a definite price up to the time the nuts are ready for immediate delivery. According to appellants, because the purpose of section 62801 as enunciated in the legislative history is to protect growers by enabling them to receive a fair price for their produce, an interpretation which requires the existence of a written contract up to the time the walnuts are ready for delivery rather than a "strict" interpretation cutting off the writing requirement when the nuts are in actual existence, better serves the purpose of the legislation. Appellants contend the legislative history of the statute supports their position. We agree.

The language "not in actual existence or" in section 62801 unnecessarily confused the trial court in making the following ruling: "The Court finds that proper interpretation of Agricultural Code Section 62801 is that when the edible nuts are *either* in actual existence *or* ready for immediate delivery, the requirement that the contract for sale of those nuts be in writing is inapplicable."

Even if the statute is somewhat ambiguous, the stated legislative intent and pertinent history underlying section 62801 clearly compel the conclusion that appellants' interpretation is correct and the court grossly misinterpreted the meaning of the section.

I. *The Interpretation of a Statute Is a Question of Law and an Appellate Court Is Not Bound by the Trial Court's Determination.*

The "applicability of a statute to conceded facts is a question of law" (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839]) and we are not bound by the trial court's determination. (*Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].) As the trial judge noted, there was no substantial conflict in the evidence regarding the terms of the contracts or when appellants'

walnuts actually came into existence. Accordingly, here, the proper interpretation of the statutory language is a question of law and we are not bound by the conclusions of the trial court.

## II. *The Purpose of the Legislation.*

The substance of the provisions of sections 62801-62803 was originally enacted in 1943 (Stats. 1943, ch. 526, § 1, p. 2077), and was contained in Agricultural Code section 1280, section 1. Section 2 of that original enactment provided this statement of policy or purpose: "It is the public policy of this State and in the furtherance of the public interest to encourage production of agricultural products. A free and unmanipulated price level for edible nuts and a *fair return to the grower* for his productive effort are necessary to encourage and increase production. The Legislature hereby declares that this act will encourage and increase such production and that this act is enacted in furtherance of the policy expressed in this section." (Italics added.)

The trial court's interpretation in effect renders the statute a nullity because few independent processors or handlers normally are apt to enter into a contract for a certain, fixed price for the sale of crops with an independent grower before the crops come into existence; buyers are interested in estimating the total anticipated yield of all growers and in arriving at a price based upon the estimated crop harvest as affected by environmental conditions, as crops always are.

The statute expressly excludes members of nonprofit cooperative associations from its provisions because those members are assured a competitive price for their crop by the favorable marketing position of the association. "[T]he essential foundation of the co-operative association is equality of burden and equality of profits, irrespective of whether one particular grower's crop may or may not be sold upon the most favorable market." (*California C. P. Growers* v. *Downey* (1925) 76 Cal.App. 1, 12 [243 P. 679].)

## III. *Statutory Construction.*

■ In construing the language of the statute, significance should be given to every word, phrase, sentence and part of the statute in pursuance of the legislative purpose. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) A court should avoid an interpretation of a statute which renders a particular phrase superfluous "if a reasonable construction can be given [the words] which will give them force and meaning." (*Rumetsch* v. *City of Oakland* (1933) 135 Cal.App. 267, 269 [26 P.2d 677].)

■ Moreover, statutes which " '. . . impose[] a new and unusual liability which partakes of the nature of a penalty, . . .' " must be strictly construed in favor of the persons sought to be subjected to their operation. (*Weber* v. *Pinyan* (1937) 9 Cal.2d 226, 229-230 [70 P.2d 183, 112 A.L.R. 407].) However, the intent of the Legislature prevails over the strict letter of the statute and the letter will, if possible, be read to conform to the spirit of the act and to effectuate the purpose of the law. (*Great Lake Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 163 [137 Cal.Rptr. 154, 561 P.2d 244].)

The statute, read as a whole, provides a private remedy where none existed for a violation of growers' rights which previously were unprotected; yet the statute is punitive because the sum fixed for the penalty by section 62802 is over and above the actual damages suffered by a producer. In fact, section 62802, if read literally, on its face imposes an absolute liability on a purchaser who takes delivery of walnuts under a contract in violation of section 62801.

IV. *Section 62801.*

■ In examining the language of section 62801, a logical interpretation consistent with the legislative intent is that contracts in writing with the specified terms are required if the edible nuts are not in actual existence and, if they are in actual existence, written contracts are required up until the time the nuts are ready for immediate delivery.

The legislative history supports this interpretation. As mentioned previously, sections 62801-62803 were taken verbatim from former Agricultural Code section 1280. Section 1280 had its genesis in Assembly Bill No. 869, which originally was proposed to add to the statute of fraud provisions of the Civil Code a specific section relating to contracts for the sale of agricultural products. Section 1 of Assembly Bill No. 869, 1943 Regular Session, provided: "Section 1630 is added to the Civil Code, to read: . . . All contracts for the sale of fruits, vegetables and edible nuts, not in actual existence or ready for immediate delivery, shall be in writing and shall have stated therein the full purchase price to be paid for the commodity upon delivery thereof in accordance with the terms of the contract, which price must be stated in a definite sum, and if the price is to be paid upon the basis of units of weight or measure, or upon the basis of a physical or chemical test, such unit or test must be specified or described and the full unit price stated. All contracts entered into in violation hereof shall be invalid and unenforceable." Section 1 excluded from its application those contracts entered into by cooperative agricultural marketing associations and also contracts for the sale of agricultural products "not [to be] changed by process-

ing during the course of marketing" when the contract was evidenced by "an instrument in writing signed by the party to be charged . . . ." (*Ibid.*)

Under the then existing statute of fraud provisions of Civil Code sections 1624a and 1724, a contract for the sale of goods at a future date, whether or not they were "procured, . . . provided, or fit or ready for delivery" (§ 1724) was not enforceable unless a written memorandum had been signed by the party to be charged, or the goods had been received and accepted by the buyer or part payment had been made. (Stats. 1931, ch. 1070, §§ 1, 13, pp. 2235, 2261.) Proposed section 1630 made no changes in existing law regarding the statute of frauds other than requiring all contracts for the sale of agricultural products and not simply those for a price of $500 or more to be in writing. (Compare Assem. Bill No. 869 (1943 Reg. Sess.) § 1, with Stats. 1931, ch. 1070, §§ 1, 13, pp. 2235, 2261.) However, the bill was later amended proposing the addition of chapter 7, consisting of section 1280, to existing division 6 of the Agricultural Code. Section 1 of the proposed amendment to be contained in section 1280 of the Agricultural Code provided: "All contracts for the sale of edible nuts, shall be in writing and shall state the full purchase price to be paid on delivery, in accordance with the terms of the contract, and must state the price in a definite sum and, if the price is to be paid upon the basis of units of weight or measure, shall specify or describe such unit and state the full unit price. All contracts hereafter entered into in violation hereof shall be invalid and unenforceable. This section shall not be applicable to contracts between growers and co-operative agricultural marketing associations operating under and by virtue of the laws of this State, or of any other State, or the District of Columbia or the United States." The final amended version of the bill included the language, "not in actual existence or ready for immediate delivery," deleted the portion of the bill which invalidated contracts in violation of the bill's provisions, and added the penalty provisions now part of the statute. (See 1 Assem. J. (1943 Reg. Sess.) pp. 1768, 1769.)

It is apparent from the legislative history that the committee on agriculture attempted to emulate the language of the statute of fraud provisions relating to the sale of future goods when it added the language, "not in actual existence or ready for immediate delivery" to Assembly Bill No. 869. As to a sale of goods to be delivered in the future, the statute of frauds required a written memorandum at all stages in the production process up to the point of immediate delivery. The phrase "in actual existence" parallels and is somewhat synonymous in an agricultural context with the word "procured" found in former Civil Code section 1724.

To interpret section 62801 to mean that written contracts were required only when purchasing nuts not in actual existence defeats the purpose of the

legislation. Such an interpretation would indicate the Legislature intended to restrict the application of the statute of frauds to contracts for the sale of agricultural products so that the writing requirement would become non-existent. The legislative history does not support such an intended result. Obviously, the language "not in actual existence or ready for immediate delivery" meant, as the former statutes stated, not yet in existence and when in existence but not ready for immediate delivery. The words are inartfully placed, but they are easily and reasonably interpreted to prevent an absurdity. ■ It is a "well-settled rule of statutory construction . . . that legislative enactments should not be construed ' "to overthrow long-established principles of law unless such [an] intention is made clearly to appear either by express declaration or by necessary implication." ' " (*People* v. *Cardenas* (1982) 31 Cal.3d 897, 913-914 [184 Cal.Rptr. 165, 647 P.2d 569].) In fact, one of the general provisions of the statute enacting the Agricultural Code in 1933 (Stats. 1933, ch. 25, p. 60) was that the provisions of the code would be construed as continuations of existing law "in so far as they [were] substantially the same as existing law." (*Ibid.*)[4]

---

[4]Statutory amendments enacted in 1983 have substantially revised section 62801 and section 62802. (See Stats. 1983, ch. 651, §§ 1-3.) These sections now read: *Section 62801*: "Except as otherwise provided in Section 62803, or unless the parties agree otherwise, every contract for the sale of edible nuts shall be in writing and shall state the full purchase price in a definite sum which is to be paid in accordance with the terms of the contract and, if the price is to be paid upon the basis of units or measures, the contract shall specify or describe the unit and state the full unit price. Written contracts under this section shall state the method by which the price is to be determined."

*Section 62802*: "Any purchaser of edible nuts which are delivered pursuant to a contract entered into on or after the effective date of the act amending this section in the 1983-84 Regular Session of the Legislature and which is in violation of this article is liable to the seller for the reasonable value of the nuts as of the time of delivery and, in addition, is liable to the seller for a penalty of *twice the difference between any amounts paid to the seller and the reasonable value of the nuts at the time of delivery.* Any purchaser of edible nuts which are delivered pursuant to a contract that was entered into prior to the effective date of the act amending this section in the 1983-84 session which is in violation of this article is liable to the seller for the reasonable value of the nuts as of the time of delivery and, in addition, is liable to the seller for a penalty of twice the reasonable value of the nuts." (Italics added.)

The portions of the 1983 amendments relating to written contracts further tighten specificity requirements by necessitating the *method* by which the price is to be computed to be included in the contract. (Leg. Counsel's Dig. of Assem. Bill No. 447 (1983-1984 Reg. Sess.).) However, under chapter 651 the parties may now agree to contract orally with one another. This, according to the terms of the bill as set forth in section 3, was necessary "to conform the law relating to the purchase and sale of edible nuts to the custom and practice in the agricultural industry . . . ." (Stats. 1983, ch. 651, § 3.) The prevailing practice in the agricultural industry is for the processor or handler to agree to pay the prevailing price in the marketplace at the time of delivery for nuts of like characteristics.

Here, had the parties contracted under the 1983 revisions to sections 62801 and 62802, the written contracts between appellants and respondent all would have been in violation of the provisions of section 62801; however, the oral contract between appellant Marchbanks and respondent would not have been.

Under the version of section 62801 as it existed at the time of the oral contract in the instant case, the statute required such contract to be in writing if the walnuts were not ready

Respondent violated the provisions of section 62801 as it read in 1979 by entering into contracts for the sale of edible nuts which contained open price terms. The question is, may appellants collect the statutory penalties specified in section 62802 of twice the reasonable value of the nuts at the time of delivery? We conclude that they may not.

## V. *Section 62802—The Penalty.*

In situations where a statute may have remedial origins, but whose effect is penal,[5] the language must be strictly construed in favor of those persons sought to be subjected to the statute's operation. " ' "A statute creating a new liability, or increasing an existing liability, or even a remedial statute *giving a remedy against a party who would not otherwise be liable,* must be strictly construed in favor of the persons sought to be subjected to their operation." ' . . . 'Since the statute imposes a new and unusual liability which partakes of the nature of a penalty, it should not, at least, receive a construction favoring the imposition of such liability.' " (*Weber* v. *Pinyan, supra,* 9 Cal.2d 226, 229-230; see also *Bozanich* v. *Kenney* (1970) 3 Cal.3d 567, 570 [91 Cal.Rptr. 286, 477 P.2d 142] [a statute in derogation of common law must be strictly construed].) The penalty of twice the reasonable value of the produce is not available under the common law of contracts unless the parties contractually agree to the penalty provision, and the sum is fixed with reference to the amount of actual damage sustained by the aggrieved party. (*Anaheim C.F. Assn.* v. *Yeoman* (1921) 51 Cal.App. 759, 761 [197 P. 959].)

The language of a statute must be interpreted in a practical, common sense manner which will meet changed conditions and the people's growing needs. Obviously, the "literal language of enactments may be disregarded to avoid absurd results and to fulfill the apparent intent of the framers." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization*

---

for immediate delivery.

Any contract for the sale of growing crops is a sale of goods for which a written memorandum signed by the party to be charged is necessary for enforcement of the contract if the value of the goods is $500 or more. (Cal.U.Com. Code, §§ 2107, 2201.) In effect, though recently amended section 62801 conforms the contractual relations between purchasers and sellers of edible nuts to the custom in the industry, the statute decreases the degree of contractual certainty these parties had under previous legislation.

[5]Section 62802 itself describes its damages provision as a "penalty" which is imposed upon a purchaser of edible nuts "delivered pursuant to a contract . . . in *violation* of this article . . . ." (Italics added.) The statute imposes an absolute liability on the purchaser who enters into a contract that does not comport with the mandate of section 62801. The Legislative Counsel's Digest to Assembly Bill No. 447, *supra,* indicated that section 62802 is a penalty provision when it stated that the "bill would revise the penalty provisions for contracts entered into on or after the effective date of the bill." (See Stats. 1983, ch. 651.)

(1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281], overruled on other grounds in *Los Angeles County Transportation Com.* v. *Richmond* (1982) 31 Cal.3d 197 [182 Cal.Rptr. 324, 643 P.2d 941].)

■ Also, when a statute is penal, "we adopt the narrowest construction of its penalty clause to which it is reasonably susceptible in the light of its legislative purpose." (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 405 [149 Cal.Rptr. 375, 584 P.2d 512].)

■ A reasonable interpretation of section 62802 is to apply the section only where the contract violates section 62801 *and the amount received* under the contract is *less* than the section 62802 price which is the reasonable value of the crop on delivery. If under the contract, the grower receives on delivery an amount more than or equal to the reasonable value of the crop, the double penalty is inapplicable. A study of the legislative purpose of the act, to ensure that the grower receives the fair market price, supports this interpretation.

If the grower receives an amount *higher* than the reasonable value of the crop under a contract in violation of section 62801, a literal reading of the statute would require the imposition of the penalty—double the amount of the reasonable value. This, of course, is a ridiculous result. ■ A statute will be construed to avoid absurd applications and to uphold its validity. (*In re Cregler* (1961) 56 Cal.2d 308, 312 [14 Cal.Rptr. 289, 363 P.2d 305].)

The avowed purpose of Assembly Bill No. 869 as originally enacted was to ensure "a fair return to the grower for his productive effort" by discouraging speculation. The penalty provisions of section 62802 were designed to ensure the grower received a fair price for the nuts he produced consistent with the underlying legislative purpose. ■ However, in the instant case, the processor did give the grower a reasonable price for the grower's nuts, which under contract was to be the prevailing price for nuts of like size and quality, according to the prevailing custom in the industry; the imposition of the double penalty in this context is totally unreasonable.

The legislative purpose of ensuring that growers receive a fair price for their edible nuts is no longer served by legislation requiring written contracts for sale at the time the edible nuts come into actual existence; thus, the recent 1983 statutory amendments to section 62801 allow oral contracts between growers and buyers. The amount of the penalty has been reduced to represent more accurately the actual damages suffered by a grower who does not receive a fair price for his nuts, the penalty now being "twice the

difference between any amounts paid to the seller and the reasonable value of the nuts at the time of delivery."

However, the statute as amended in 1983 must be interpreted so the penalty is *applied* only if the amount received on delivery is *less* than the reasonable value. Otherwise, were the grower to receive *more* than the reasonable value pursuant to a contract in violation of section 62801, he would receive twice the difference between what he received and the reasonable value, or, the higher the price he was fortunate enough to receive, the higher the penalty imposed. Again, this is utterly absurd. The Legislature obviously intended that the penalty would apply only when the grower received on delivery an amount less than the price guaranteed him in section 62802 or the reasonable value. The whole purpose of the legislation has been to protect the grower in a fair, common sense manner. Here, appellants did not sue for the reasonable value of their crops; they received that amount; they sued for the amount of the double penalty.

Had the parties in this case contracted under the 1983 amendment to sections 62801 and 62803, appellants would have received no remuneration for the buyer's failure to comply with the statute. Because appellants received the reasonable value of the walnuts, there was no *difference* in value between what was received and the reasonable value of the walnuts upon which to assess a penalty.

Under the 1983 amendment, obviously a grower is entitled to the specified penalty for failure to comply with the requirements of section 62801 only if he receives *less* than the reasonable value of the walnuts at the time of delivery. The 1983 amendment is consistent with the declared legislative purpose of section 62802 at the time of its original enactment. It is also consistent with our interpretation of section 62802 before it was amended: the penalty is not imposed if the grower received the reasonable value of the edible nuts at the time of delivery.

Under the stipulated facts, appellants received the reasonable value of the edible nuts delivered; consequently, pursuant to our discussion, the penalty portion of the statute is inapplicable even though the contracts were in violation of section 62801. Where the legislative intent is clear, penal statutes must be construed reasonably to effectuate such intent. (*People* v. *Hernandez* (1980) 111 Cal.App.3d 888, 900 [168 Cal.Rptr. 898].) ▮ When a statute is penal, principles governing construction of penal statutes apply even when the underlying action is civil in nature. (*Walsh* v. *Dept. Alcoholic Bev. Control* (1963) 59 Cal.2d 757, 764-765 [31 Cal.Rptr. 297, 382 P.2d 337].)

■ Appellant growers were not deprived of the reasonable income from their year's hard-earned, annual harvest when they sought to invoke the statute. The legislative intent to protect and encourage the grower by imposing a double penalty upon the buyer has no relation to facts where the reasonable value was paid, as in this case. The trial court correctly refused to impose the penalty of section 62802.

The judgment is affirmed.

Hamlin, J., and Ardaiz, J.,* concurred.

A petition for a rehearing was denied October 5, 1984, and appellants' petition for a hearing by the Supreme Court was denied November 28, 1984. Bird, C. J., was of the opinion that the petition should be granted.

*Assigned by the Chairperson of the Judicial Council.