[No. B022737. Second Dist., Div. Seven. July 29, 1987.]

DARRYL MOUNGER et al., Plaintiffs and Appellants, v.
DARYL F. GATES, as Chief of Police, etc., et al., Defendants and
Respondents.

COUNSEL

Robert J. Loew, Loew & Marr, Cecil Marr and Diane Marchant for Appellants and Plaintiffs.

James K. Hahn, City Attorney, Frederick N. Merkin, Assistant City Attorney, and S. David Hotchkiss, Deputy City Attorney, for Respondents and Defendants.

OPINION

JOHNSON, J.—Darryl Mounger and the Los Angeles Police Protective League (LAPPL) appeal from an order sustaining a demurrer without leave to amend to the first through fifth causes of action in the second amended complaint seeking injunctive and declaratory relief for alleged violations of section 3303 of the Government Code. The question on appeal is whether Goverment Code section 3309.5[1] requires appellant Mounger to exhaust his

---

[1] Section 3309.5 states in pertinent part: "(a) It shall be unlawful for any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed to them by this chapter.

"(b) The superior court shall have initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of this section.

administrative remedies before seeking judicial relief. For the reasons set forth below, we conclude the trial court erred. Since the parties appeal from a nonappealable order, we will treat the purported appeal as a petition for writ of mandate and issue a peremptory writ of mandate directing the trial court to vacate the order sustaining the demurrer without leave to amend to counts one through five. We will continue to refer to the parties as appellants and respondents.

## STATEMENT OF FACT AND PROCEEDINGS BELOW

Plaintiffs alleged in their second amended complaint Mounger, a sergeant in the Los Angeles Police Department, was the subject of an investigation by the Internal Affairs Division (IAD) for misconduct. Mounger was interrogated by the IAD on three separate occasions. In count one Mounger claimed certain violations of section 3303 occurred during his interrogation on October 26, 1984. These violations included not being informed prior to the interrogation of the investigation or of rank, name and command of the officer in charge in violation of subdivision (b),[2] not being informed of the nature of the investigation in violation of subdivision (c),[3] not being allowed to tape record the interrogation and denied access to copies of others' transcribed notes, reports, or complaints in violation of subdivision (f),[4] not being advised of his constitutional rights even though he might be charged with a criminal offense in violation of subdivision (g),[5] and not being al-

---

"(c) In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer."

All subsequent statutory citations refer to the Government Code unless otherwise indicated.

[2] Section 3303, subdivision (b) provides: "The public safety officer under investigation shall be informed prior to such interrogation of the rank, name and command of the officer in charge of the interrogation, the interrogating officers, and all other persons to be present during the interrogation. All questions directed to the public safety officer under interrogation shall be asked by and through no more than two interrogators at one time."

[3] Section 3303, subdivision (c) states: "The public safety officer under investigation shall be informed of the nature of the investigation prior to any interrogation."

[4] Section 3303, subdivision (f) reads: "The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential. No notes or reports which are deemed to be confidential may be entered in the officer's personnel file. The public safety officer being interrogated shall have the right to bring his own recording device and record any and all aspects of the interrogation."

[5] Section 3303, subdivision (g) states: "If prior to or during the interrogation of a public safety officer it is deemed that he may be charged with a criminal offense, he shall be immediately informed of his constitutional rights."

lowed the opportunity to have a representative present in violation of subdivision (h).[6]

In count two Mounger alleged he was interrogated on October 29, 1984, by more than two interrogators at one time in violation of subdivision (b), was denied access to copies of transcribed notes, reports or complaints in violation of subdivision (f), and was interrogated after exercising his right to remain silent.

Mounger alleged in count three he was again interrogated on November 8, 1984, by more than two interrogators at one time in violation of subdivision (b), was interrogated after exercising his right to remain silent under compulsion in violation of subdivision (g), and was denied access to copies of transcribed notes, reports or complaints of investigators or other persons in violation of subdivision (f).

In count four LAPPL[7] alleged the Los Angeles Police Department routinely violated subsection (g) by compelling officers to be interrogated even though they had invoked their constitutional rights and by denying them access to copies of materials enumerated in subdivision (f) on the basis of confidentiality. Mounger and LAPPL sought declaratory relief in count five. Defendants demurred on the ground counts one through five were moot as to Mounger.

The trial court sustained the demurrer without leave to amend to counts one through five on the ground Mounger had agreed in argument he had not exhausted his administrative remedies. At the hearing on the demurrer the trial court sustained it entirely to counts one through five, making no distinction between counts alleged by Mounger and those alleged by LAPPL. The court made no distinction between counts alleged by Mounger and those alleged by LAPPL. It ruled counts six and eight stated causes of action as to Tuller, Lombardo and Butz for conspiracy and invasion of

---

[6] Section 3303, subdivision (h) provides: "Upon the filing of a formal written statement of charges, or whenever an interrogation focuses on matters which are likely to result in punitive action against any public safety officer, that officer, at his request, shall have the right to be represented by a representative of his choice who may be present at all times during such interrogation. The representative shall not be a person subject to the same investigation. The representative shall not be required to disclose, nor be subject to any punitive action for refusing to disclose, any information received from the officer under investigation for noncriminal matters. . . ."

[7] In count five both Mounger and LAPPL sought declaratory relief pursuant to section 1060 (Code Civ. Proc.) determining the rights and duties of the respective parties in this controversy. Because we conclude the trial court erred in sustaining the demurrer without leave to amend with respect to Mounger on the ground of not exhausting his administrative remedy, a fortiori the trial court erred in ruling on this ground with respect to counts four and five alleged by LAPPL.

privacy and intentional infliction of emotional distress. It further ruled plaintiffs stated a cause of action for negligent management, control, training and supervision in count seven as to Gates and granted leave to amend count nine.

■ Appellants appeal from a minute order sustaining the demurrer without leave to amend which is not appealable. (*Beazell* v. *Schrader* (1963) 59 Cal.2d 577, 579 [30 Cal.Rptr. 534, 381 P.2d 390].) They may appeal only from a judgment of dismissal based upon the sustaining of a demurrer. (*Taylor* v. *State Personnel Board* (1980) 101 Cal.App.3d 498, 501, fn. 1 [161 Cal.Rptr. 677].) ■ A judgment of dismissal could not properly issue in the instant case without violating the one-final-judgment rule because the trial court had disposed of only five of the nine counts in the complaint. (*U.S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 11 [112 Cal.Rptr. 18].) ■ Rather than dismiss the appeal, we treat the purported appeal as a petition for writ of mandate because it presents a question of public importance (see *Estate of Hearst* (1977) 67 Cal.App.3d 777, 781 [136 Cal.Rptr. 821] [treated appeal as petition for writ of certiorari because involved question of public importance]; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 118, pp. 753-757); the parties have fully briefed the propriety of the trial court's ruling (*U.S. Financial* v. *Sullivan, supra,* 37 Cal.App.3d at p. 11); and respondent did not challenge its appealability (*Poe* v. *Diamond* (1987) 191 Cal.App.3d 1394, 1398 [237 Cal.Rptr. 80]; *Estate of Hoertkorn* (1979) 88 Cal.App.3d 461, 463 fn. 1 [151 Cal.Rptr. 806].) We find the circumstances here compel us to decide the issue presented. (See *Olson* v. *Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 62-63, pp. 86-88.) As we discuss inter alia the rights and protections at issue in this case are matters of statewide concern because they affect the public interest in promoting stable employer-employee relations in public safety organizations and assure procedural protections for public safety officers.

## I. THE TRIAL COURT ERRED IN SUSTAINING THE DEMURRER WITHOUT LEAVE TO AMEND TO THE FIRST FIVE CAUSES OF ACTION ON THE GROUND MOUNGER HAD NOT EXHAUSTED HIS ADMINISTRATIVE REMEDIES.

■ Appellants contend the trial court erred in applying the exhaustion doctrine to alleged violations of section 3303. We agree.

■ In reviewing the sufficiency of a complaint against a demurrer we must " 'treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law . . . [as well as] consider matters which may be judicially noticed.' " (*Blank* v. *Kirwan*

(1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], quoting *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) "When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Ibid.*) However, we must affirm if any ground raised by defendants requires the sustaining of the demurrer whether or not the trial court specified all the grounds. (*Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 627 [137 Cal.Rptr. 681]; see § 472d, Code Civ. Proc.) Further, "[u]nless clear error or abuse of discretion is demonstrated, the trial court's judgment of dismissal following the sustaining of defendants' demurrer will be affirmed on appeal [citation omitted]." (*Owens* v. *Foundation for Ocean Research* (1980) 107 Cal.App.3d 179, 182 [165 Cal.Rptr. 571]; disapproved on another ground in *Tenzer* v. *Superscope, Inc.* (1985) 39 Cal.3d 18, 29 [216 Cal.Rptr. 130, 702 P.2d 212].)

In counts one through three Mounger alleged violations of section 3303, subdivisions (b), (c), (f), (g), and (h). If short, Mounger contends he stated facts sufficient to make out a cause of action for injunctive relief for these departmental violations pursuant to section 3309.5 on the basis they constitute substantial violations of his statutory rights under section 3303. To state a cause of action under section 3309.5 the plaintiff must show the public safety department violated a provision of the chapter (§ 3300 et seq.). We conclude the trial court erroneously imported another element into section 3309.5 when it ruled Mounger must first exhaust any administrative remedies he might have before seeking judicial relief under this section.[8]

Respondents state they do not contend in all situations an officer must exhaust all administrative remedies prior to seeking judicial relief under section 3309.5, but rather when an officer such as Mounger has elected to proceed with an available administrative remedy which ends in binding arbitration, he or she must first exhaust this remedy before pursuing judicial relief. We find no merit in this contention. There is nothing in section 3309.5 which requires an officer to exhaust his or her administrative remedies if, as in the instant case, that officer also seeks relief through a collective bargaining agreement or other agreed upon procedure. Such a conclusion is contrary to the plain language of the section. Subdivision (b) states: "The

---

[8] We note the only opinion holding exhaustion of administrative remedies is required has been depublished by our Supreme Court. (See *Kelly* v. *City of Fresno* (Cal.App.).)

superior court shall have *initial jurisdiction* over any proceeding brought by any public safety officer against any public safety department for alleged violations of this section [italics added]."

The legislative history of section 3309.5 shows it was specifically designed to allow an officer to pursue a remedy immediately in the courts for violation of these rights during the investigation and not be required to wait for judicial review after administrative consideration of those violations. Section 3309.5 was introduced as Assembly Bill 1807 in 1979. A report by the Senate Committee on Judiciary highlighted that the effect of the bill would be to provide peace officers equitable relief by allowing them "immediate access to superior court to enforce their rights under the Act without having to pursue administrative remedies." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1807 (1979-1980 Reg. Sess.) as amended May 17, 1979.) The legal affairs secretary advised the Governor's office in an enrolled bill report the purpose of the bill is to allow immediate judicial relief for police officers instead of requiring them to "exhaust lengthy administrative procedures." (Legal affairs sec., Enrolled Bill Rep., Assem. Bill No. 1807 [July 25, 1979].) The Office of Employee Relations also advised the Governor's office: "This legislation, sponsored by PORAC [Peace Officers Research Association of California], would give initial jurisdiction in alleged violations of the Bill of Rights for local peace officers to superior courts; currently, alleged violations must first be heard by the local law enforcement agency before they are taken to court." (Emp. Rel. Off., Enrolled Bill Rep., Assem. Bill No. 1807 [July 23, 1979].) We think it clear the Legislature intended with the passage of section 3309.5 to eliminate the requirement peace officers must exhaust their administrative remedies for alleged violations of the act before seeking judicial relief.

In any event, the administrative appeal Mounger elected to pursue was from the discipline imposed and not from the violation of his procedural rights during the interrogation. ■ The doctrine of exhaustion of administrative remedies "does not apply if the remedy is inadequate." (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 342 [124 Cal.Rptr. 513, 540 P.2d 609].) The instant case is unlike *Cone* v. *Union Oil Co.* (1954) 129 Cal.App.2d 558 [277 P.2d 464]. In that case plaintiff was precluded from maintaining her action because a strike settlement agreement required her to exhaust grievance and arbitration procedures in an effort to settle disputes within the scope of the contract before pursuing a judicial remedy. *(Id.,* at p. 563.) ■ In contrast, Mounger's claim is

based on statutory rights provided by section 3303 not in a collective bargaining agreement.[9]

Similarly respondents' contention Mounger waived his right to seek judicial relief pursuant to section 3309.5 when he elected to simultaneously pursue his administrative remedy is meritless. Nothing in section 3309.5 states an officer must elect between seeking administrative relief for a departmental disciplinary action and seeking judicial relief for alleged procedural violations. To conclude as respondents argue would require an officer to forego either his or her contract right to appeal a departmental action or his or her statutory rights to fair procedures under section 3303. We agree with appellants section 3309.5 guarantees immediate judicial attention to alleged violations of the act. We hold officers do not waive their statutory rights under section 3309.5 by choosing to proceed contemporaneously with an administrative appeal of the discipline imposed against them.

II. THIS APPEAL IS NOT MOOT.

█ Respondents asked this court to take judicial notice (Evid. Code, §§ 452, subd. (b); 459) of a memorandum issued by the Chief of the Los Angeles Police Department concerning its adoption of a procedure regarding the availability of statements regarding the allegation prior to an accused officer's interview pursuant to section 3303, subdivision (f). This court granted that motion. Respondents contend this memorandum entitled "Temporary Procedure Regarding Availability of Statements Prior to Accused Officer's Interview" renders moot counts one through five.

We conclude from our review of the memorandum it does not render moot the issue in the instant case. The memorandum states its purpose is "to implement a *temporary* Department procedure which conforms to a recent superior court interpretation of Government Code Section (GC) 3303 (f)." (Italics added.) In their complaint plaintiffs alleged violations of subsections (b), (c), (g), and (h) in addition to (f). For this reason alone, respondents' contention is meritless. Moreover, whether this *temporary* procedure for subdivision (f) actually has been implemented would be a factual

---

[9] At oral argument respondents contended section 3303 does not apply because the interrogations occurred during a criminal investigation. We think this contention is a red herring. First, appellants are appealing from a judgment of dismissal following the sustaining of a demurrer without leave to amend and the complaint does not allege the violations occurred during an investigation concerned solely with alleged criminal violations. Second, subdivision (h) which gives an officer the right to choose a representative does not apply in "an investigation concerned solely and directly with alleged criminal activities."

matter for the trial court to determine not something to be resolved at the pleading stage. In any event the implementation of a *temporary* procedure cannot render moot a lawsuit aimed at a *permanent* change in procedure.

### III. This Cause Is Remanded to Trial Court for Consideration of Award of Attorneys' Fees for Public Interest.

Appellants request this court award them attorneys' fees on the appeal only[10] pursuant to section 1021.5 (Code Civ. Proc.).[11] This section authorizes the trial court to compel the losing party to pay attorneys' fees to the prevailing party when (1) the action results in the enforcement of an important right affecting the public interest; (2) the general public or a large class of persons will significantly benefit from the decision; (3) the necessity and financial burden of private enforcement make the award appropriate; and (4) in the interests of justice the fees should not be paid out of the recovery. (*Los Angeles Police Protective League* v. *City of Los Angeles, supra,* 188 Cal.App.3d at p. 6; § 1021.5, Code Civ. Proc.) In the instant case the trial court did not consider this matter.

We concluded in *Los Angeles Police Protective League* v. *City of Los Angeles* (1985) 163 Cal.App.3d 1141, 1150-1151 [209 Cal.Rptr. 890] an appellate court is seldom in a position to make the *complete* determination whether attorneys' fees should be awarded under section 1021.5. In *Los Angeles Police Protective League* v. *City of Los Angeles, supra,* 188 Cal.App.3d at pages 6-7, 11, we decided, however, the appellate court does not have to defer totally to the trial court's resolution of the four elements of the standard in section 1021.5 when the legal work resulted in a published appellate court opinion. In that case we determined the appellate

---

[10]Appellants appropriately do not request an attorney fee award for legal work performed in the trial court. The relief appellants sought and the issues they raised in the trial court would not have warranted a fee award under section 1021.5. But when the trial court sustained the demurrer for failure to exhaust administrative remedies—or on grounds appellants had elected an administrative remedy—it created legal issues at the appellate level which could justify an award for the lawyers' efforts during that phase of the proceedings. (For discussion of this distinction, see *Los Angeles Police Protective League* v. *City of Los Angeles* (1986) 188 Cal.App.3d 1, 17 [232 Cal.Rptr. 697].)

[11]Section 1021.5 (Code Civ. Proc.) states as follows: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuninary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

court often is well situated to decide (1) whether the legal action has a significant impact on the law because it enforces an important legal right, and (2) whether that decision confers a significant benefit on a substantial segment of the citizenry. (*Id.,* at pp. 8-9.)

■ We conclude appellants have satisfied the first two elements of the section 1021.5 standard. As to the first, our Supreme Court has concluded the rights and protections in the Public Safety Officers Procedural Bill of Rights Act "are matters of statewide concern" and appellate decisions which announce important principles that make the act more effective are sufficiently important to justify an award. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 143 [185 Cal.Rptr. 232, 649 P.2d 874].) ■ The Public Safety Officers Procedural Bill of Rights Act (§§ 3300-3311) specifies the "basic rights and protections which must be afforded all peace officers (see § 3301) by the public entities which employ them. It is a catalogue of the minimum rights (§ 3310) the Legislature deems necessary to secure stable employer-employee relations (§ 3301)." (*Baggett* v. *Gates, supra,* 32 Cal.3d at p. 135.)

■ First, we find it furthers the public interest to allow officers swift judicial review of alleged violations of their basic procedural rights. Our Supreme Court in *Baggett* v. *Gates, supra,* 32 Cal.3d at page 143 concluded the rights and protections in the Public Safety Officers Procedural Bill of Rights Act "are matters of statewide concern" and thus are sufficiently important to justify an award. Our decision makes it clear public safety officers do not have to exhaust their administrative remedies before seeking judicial relief for alleged violations of section 3303. Moreover, it holds officers can challenge departmental disciplinary actions in administrative proceedings while simultaneously pursuing judicial remedies for procedural violations. Thus, the rulings embodied in this decision enforce important rights affecting the public interest.

As to the second of the section 1021.5 criteria, this decision benefits not only Mounger but also all public safety officers in the state. This group in itself represents a large class of persons. But beyond that, as the Supreme Court observed in *Baggett,* the citizenry as a whole benefits from a decision like this which serves the legislative purpose of promoting stable employer-employee relations in public safety organizations. (See *Baggett* v. *Gates, supra,* 32 Cal.3d at p. 143.)

Since the trial court did not have occasion to reach the attorney fee issue we do not have evidence before us on the third and fourth criteria of section 1021.5. For instance, we do not know how much appellants expended on their appeal and thus do not know the size of the financial burden required

to pursue private enforcement of the issues involved in this appeal. Nor do we have information as to the monetary benefits, if any, which will accrue to appellant Mounger or appellant Los Angeles Police Protective League, although we can speculate they will be rather small. We observe, however, that neither appellant is ineligible for an attorney fee award merely because the protective league is a union which may have absorbed all or most of the expenses of this appeal. (See discussion in *Los Angeles Police Protective League* v. *City of Los Angeles, supra,* 188 Cal.App.3d at pp. 16-17.) Thus, we remand this cause to the trial court to determine whether appellants satisfy the final two elements required by section 1021.5 and, if met, to set the appropriate amount of appellants' attorney fees on the appeal of this case.

## DISPOSITION

We deem the purported appeal a petition for writ of mandate. Let a peremptory writ of mandate issue commanding the superior court to vacate its order of July 2, 1986, and thereafter (1) enter in place thereof an order denying defendants' demurrer to counts one through five and (2) determine whether appellants should be awarded appellate fees. Appellants to receive their costs on appeal.

Thompson, J., concurred.

LILLIE, P. J.—I respectfully dissent. I would dismiss the purported appeal because the minute order sustaining demurrer is a nonappealable order, and I would decline to to make this order reviewable by mandamus. Further, I agree with the ruling of the trial court sustaining the demurrer for Mounger's failure to exhaust his administrative remedies and would deny relief.

## I

### DISMISSAL OF APPEAL

Plaintiffs appeal from minute order sustaining demurrer of all named City defendants to counts 1 through 5 of the second amended complaint. The minute order is nonappealable. Only a judgment of dismissal entered on order sustaining demurrer is appealable (*Taylor* v. *State Personnel Bd.* (1980) 101 Cal.App.3d 498, 501, fn. 1 [161 Cal.Rptr. 677]); no such judgment was entered in the instant case, and for good reason. The minute order disposed of only five counts of a nine-count complaint of which four counts against the demurring defendants are still pending in the trial court. The court's ruling only could be and properly was embodied in a minute order pending final judgment in the action. Any judgment entered on such an order would not be a final judgment appeal from which would be prema-

ture. (*U.S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 11 [112 Cal.Rptr. 18]; *McMillin* v. *Ventura Sav. & Loan Assn.* (1971) 15 Cal.App.3d 588, 589 [93 Cal.Rptr. 359].) There can be but one judgment in an action. (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 806 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Bank of America* v. *Superior Court* (1942) 20 Cal.2d 697, 701 [128 P.2d 357]; *Mather* v. *Mather* (1936) 5 Cal.2d 617, 618 [55 P.2d 1174]; *De Vally* v. *Kendall de Vally O. Co., Ltd.* (1934) 220 Cal. 742, 745 [32 P.2d 638].) Thus, I agree with the majority that to accept appellate jurisdiction in this proceeding is to do violence to the one judgment rule which precludes piecemeal disposition and immediate appellate consideration of rulings prior to the final adjudication of the entire cause. However, I cannot agree, under the circumstances here, that we should salvage this defective appeal by treating it as a proceeding for writ of mandate.

Many authorities view this innovation as a readily available method of assuming review jurisdiction, and uphold this court's power to exercise its discretion to make nonappealable orders reviewable by mandamus (*Schultz* v. *Regents of University of California* (1984) 160 Cal.App.3d 768, 788 [206 Cal.Rptr. 910]; *Branham* v. *State Farm Mut. Auto Ins. Co.* (1975) 48 Cal.App.3d 27, 32 [121 Cal.Rptr. 304]; *Clovis Ready Mix Co.* v. *Aetna Freight Lines* (1972) 25 Cal.App.3d 276, 282 [101 Cal.Rptr. 820]), but they all agree that we should not exercise that power except in "unusual circumstances." (*Olson* v. *Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720]; *U.S. Financial* v. *Sullivan, supra,* 37 Cal.App.3d 5, 12). As stated in *U.S. Financial,* to justify such treatment, circumstances should be shown "compelling enough to indicate the propriety of a petition for writ of mandate in the first instance. . . ." (P. 12.) Otherwise, this practice would obliterate the one final judgment rule.

I perceive here no showing of unusual circumstances and, on the state of the record, this court should decline to assume jurisdiction by invoking the extraordinary writ process. (*DeGrandchamp* v. *Texaco, Inc.* (1979) 100 Cal.App.3d 424, 437 [160 Cal.Rptr. 899].) The majority rationalizes its justification for an immediate appellate resolution of the issue raised by the trial court's ruling by construing it as presenting "a question of public importance," citing *Estate of Hearst* (1977) 67 Cal.App.3d 777, 781 [136 Cal.Rptr. 821], which involved public access to certain court records. Both parties have briefed the issue and it is true, as asserted by the majority, that "respondent did not challenge [the] appealability" of the minute order involved. But that is a fact that troubles me. Respondents may or may not have weighed the question of appealability but, having found the appeal to be premature, we have no way of knowing their views concerning use of mandamus in these circumstances. Nor do I believe the issue here to be of such "public importance" as to warrant immediate appellate consideration

of the trial court's ruling prior to final adjudication of the entire cause. Further, this is not a situation in which there is no adequate remedy by appeal. When the remaining counts are disposed of by the trial court and a final judgment entered in the case, all issues can then be resolved on appeal.

The second amended complaint contains nine counts each of which rests on facts "common to all," names virtually all demurring defendants and arises out of the same series of administrative hearings. I find nothing in the circumstances here justifying, let alone compelling, the resolution of the issue by way of mandamus. Employment of the writ process in appeals such as this, absent a showing of extraordinary grounds for the issuance of the writ of mandate, should be discouraged as countenancing appellate review of nonappealable orders resulting in piecemeal disposition of causes and fostering shoddy appellate practice.

## II

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

The doctrine of exhaustion of administrative remedies requires a party to use all available administrative procedures before resorting to the courts for relief. (*McHugh* v. *County of Santa Cruz* (1973) 33 Cal.App.3d 533, 538 [109 Cal.Rptr. 149].) The exhaustion of administrative remedies requires not merely the initiation of prescribed administrative procedures, but also requires pursuing them to their appropriate conclusion and awaiting their final outcome before seeking judicial intervention. (*Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 313-314 [159 Cal.Rptr. 416].) The failure to exhaust administrative remedies is a jurisdictional defect which bars court action. (*Miller* v. *United Airlines, Inc.* (1985) 174 Cal.App.3d 878, 890 [220 Cal.Rptr. 684]; *Barnes* v. *State Bd. of Equalization* (1981) 118 Cal.App.3d 994, 1001 [173 Cal.Rptr. 742].)

While it is true that plaintiff did not allege Mounger had exhausted his administrative remedies and the face of the complaint does not show that he had, it cannot be denied by appellants that he did not. In oral argument on hearing on the demurrer, appellants conceded, as recited by the trial court in its minute order, "that there was an official reprimand with a grievance procedure to follow"; thus, the court found, "counts 1-5 must await administrative remedies being exhausted" and "Insofar as [Government Code section 3303 et seq.] may prevent injunctive relief to proceed without embarking on the administrative route has been waived, demurrer to 1st through 5th counts are [*sic*] sustained without leave." The purpose of section 3309.5, Government Code, well may be, as asserted in the majority opinion, "to allow immediate judicial relief for police officers instead of

requiring them to 'exhaust lengthy administrative procedures,' " but in my view, the statute does not in all instances change the rule requiring exhaustion of administrative remedies. If the police officer in no manner engaged in the administrative procedure to obtain redress for alleged violations of the Public Safety Officers Procedural Bill of Rights Act (§ 3300 et seq., Gov. Code) and, without pursuing any administrative remedy, sought injunctive relief from the courts in the first instance, i.e., initially, I might agree that under section 3309.5, the superior court would have "initial jurisdiction over any proceeding brought" for the alleged violations. However, this is not our case. Mounger did not "initially" seek injunctive relief for the alleged violations. He was the subject of an administrative investigation and hearing, during which Mounger claims the violations occurred, which led to administrative discipline; in fact, he admitted that the administrative hearing resulted in an official reprimand and there was a grievance procedure to follow. Mounger did not seek injunctive relief until after the official reprimand. Section 3309.5 may or may not authorize a police officer to bypass administrative procedures altogether and initially apply to the court for relief, but it is my view that once an officer elects to pursue his administrative remedies, he must see that process through to its conclusion before seeking judicial relief under section 3309.5. He may not, as Mounger attempts to do, cut short the administrative proceedings by filing an action pursuant to section 3309.5 before those proceedings have terminated.

Legislative enactments should not be construed to overthrow long-established principles of law unless such a intention is clearly made to appear either by express declaration or by necessary implication. (*Tos* v. *Mayfair Packing Co.* (1984) 160 Cal.App.3d 67, 77 [206 Cal.Rptr. 459].) "Unless expressly provided, statutes should not be interpreted to alter the common law, and should be construed so as to avoid conflict with common law rules. [Citations.] A statute will be construed in light of common law decisions, unless its language ' "clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning a particular subject matter. . . ." [Citations.]' [Citation.] There is a presumption that a statute does not, by implication, repeal the common law. [Citation.] Repeal by implication is recognized only where there is no rational basis for harmonizing two potentially conflicting laws." (*People* v. *Zikorus* (1983) 150 Cal.App.3d 324, 330 [197 Cal.Rptr. 509].) The language of section 3309.5 does not expressly abrogate the doctrine of exhaustion of administrative remedies. The apparent conflict between the statute's grant of initial jurisdiction to the superior court on the one hand, and the common law requirement of exhaustion of administrative remedies on the other, may be reconciled by construing the statute to mean that a court has exclusive initial jurisdiction over disputes arising under Government Code section 3300 et seq. only when a police officer applies directly to the court for relief

without first having initiated administrative proceedings for the resolution of such disputes.

The majority opinion concludes that, in any event, Mounger's failure to exhaust available administrative remedies does not bar the present action because his administrative remedy is inadequate in that "the administrative appeal Mounger elected to pursue was from the discipline imposed" whereas in this action he seeks redress for the "violation of his procedural rights during the interrogation." This is not a valid consideration in determining the applicability of the doctrine of exhaustion of administrative remedies. "Even where the administrative remedy may not resolve all issues or provide the precise relief requested by a plaintiff, the exhaustion doctrine is still viewed with favor 'because it facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency.' [Citation.] It can serve as a preliminary administrative sifting process [citation], unearthing the relevant evidence and providing a record which the court may review." (*Yamaha Motor Corp.* v. *Superior Court* (1986) 185 Cal.App.3d 1232, 1240 [230 Cal.Rptr. 382].)

Petitions for a rehearing were denied August 28, 1987, and the opinion was modified to read as printed above. Lillie, P. J., was of the opinion that the petition should be granted.